IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 3:05-CR-220-M |
| | § | |
| MARK MANNERS (02) | § | |
| ROBERT LOEB (03) | § | |
| ANDREW SIEBERT (04) | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Joint Motion to Disqualify Prosecutor. Having considered the motions and briefs of all parties, and for the reasons set forth below, the Court concludes that Assistant United States Attorney David Jarvis should not be disqualified from prosecuting this case. Accordingly, Defendants' Joint Motion to Disqualify Prosecutor is DENIED.

Background

Defendants Mark Manners, Robert Loeb, and Andrew Siebert have asked the Court to disqualify Assistant United States Attorney ("AUSA") David Jarvis from prosecuting this case so that Jarvis can be available to testify regarding a meeting he had with a former co-defendant, Charles Cooper Burgess,[1] which took place on July 10, 2006. The only persons present at the July 10 meeting were Jarvis, Burgess, Special Assistant United States Attorney William Martin, and Burgess's attorney, George West. During the meeting, Burgess confessed to several instances of illegal conduct that he engaged in while in plea negotiations with the Government, including

---

[1] On January 13, 2006, Burgess entered a guilty plea and promised to cooperate with the Government and provide testimony for the Government in the trials of Manners, Loeb, and Siebert.

fraudulently purchasing a car, submitting a forged lease application, and attempting to bribe a case agent to help ensure that he would not go to prison. Jarvis testified to the details of the meeting at a hearing to revoke Burgess's pretrial release.

On September 12, 2006, the Court held a hearing on this matter and ordered additional briefing on the ethical implications, if any, of calling West to testify to the July 10 meeting. Following that briefing, the Government submitted a Second Supplemental Response to Defendants' Motion to Disqualify Prosecutor, notifying the Court that attorney Reed Prospere had been retained as counsel by Burgess and that Prospere expected West to file a motion to withdraw his representation of Burgess. The Court then asked Defendants to submit additional briefing on the issue of how Prospere's substitution for West as Burgess's counsel affected the need for Jarvis's disqualification. After Defendants' submission, the Government filed a further Response in Opposition, to provide to the Court a copy of a waiver of attorney-client privilege, signed by Burgess, as to his statements at the July 10 meeting.

Analysis

*I. The Need for Testimony*

Defendants are seeking Jarvis's testimony as (1) evidence of crimes committed by Burgess, admissible under Federal Rule of Evidence 404(b) "to show Burgess's modus operandi—namely that he regularly duped unsuspecting business contacts into giving him money for nefarious purposes or unknowingly assisting him in perpetuating fraud";[2] (2) character evidence on the issue of Burgess's untruthfulness under Federal Rule of Evidence 608(b); and (3) impeachment testimony,

---

[2] Defendants' Joint Motion to Disqualify Prosecutor and Brief in Support at 13.

should Burgess change his testimony at trial.

The Government argues that the Defendants are attempting to introduce evidence that is inadmissible under Federal Rule of Evidence 404(b), i.e., attempting to prove "character of a person in order to show action in conformity therewith." The Government's cited authority, however, supports the opposite conclusion. In *United States v. McClure*, 546 F.2d 670 (5th Cir. 1977), the Fifth Circuit held that the district court committed reversible error in excluding proffered testimony from three individuals regarding the prior bad acts of a government informant. The court held that "under Fed. R. Evid. 404(b) evidence of a systematic campaign of threats and intimidation against other persons is admissible to show lack of criminal intent by a defendant who claims to have been illegally coerced." *Id.* at 672–73. The court "intimate[d] no opinion as to the credibility of [defendant's] entrapment defense," but "decide[d] only that a jury could not properly convict him absent the opportunity to hear the proffered testimony bearing upon his theory of defense and weigh its credibility along with the other evidence in the case." *Id.* at 673.

Here, the Defendants are attempting to introduce evidence of Burgess's prior deceptive acts to show that "Burgess masterminded the scheme charged in the indictment and then obtained the unwitting cooperation of others by forging and falsifying documents, engaging in identity theft and applying the force of his apparently very convincing personality."[3] Under *McClure*, this evidence is relevant to the Defendants' defense of lack of criminal intent and is admissible under Federal Rule of Evidence 404(b).

The Government argues that the only permissible use of any testimony provided by Jarvis would be as potential impeachment testimony. The Government maintains, however, that live

---

[3] Defendants' Joint Brief Regarding Implications of Calling Counsel for Charles Burgess as a Defense Witness at Trial ("Defendants' Joint Brief") at 4.

testimony used for impeachment purposes is not necessary because it would be needlessly cumulative, arguing that there is plenty of evidence regarding Burgess's deceptive schemes, along with alternative sources of evidence such as an eight-page affidavit signed by Burgess recounting the substance of the July 10 meeting ("Burgess affidavit"); the transcript of the revocation hearing regarding the July 10 meeting ("hearing transcript"); a September 20, 2006, letter the Government sent to Defendants with additional statements made by Burgess, in accordance with its obligations under *Brady v. Maryland* ("*Brady* letter"); and copies of notes taken about the July 10 meeting by Jarvis and Martin.[4]  The Government then cites five cases for the proposition that "in analogous circumstances district courts have exercised the discretion to manage the evidence and balance the reasonable interests of the parties."[5]  *See United States v. Diozzi*, 807 F.2d 10, 13 (1st Cir. 1986) (attorneys offered to stipulate to statements made by their clients in a written submission); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001) (each item of information to which the attorney would testify was available from another source); *United States v. Vaughn*, 111 F.3d 610, 614 (8th Cir. 1997) (attorney's testimony regarding a prior inconsistent statement made by a police officer was rendered moot when the officer admitted to making the prior inconsistent statement).  In this case, the Court believes the equivalent source of the information regarding the meeting is testimony from another person present at the meeting, George West.  The key issue, then, is whether George West, Burgess's attorney, is an appropriate witness.[6]

---

[4] The Court considers this argument to be an implicit agreement that the Government will not object should the Defendants need to use the Burgess affidavit, hearing transcript, *Brady* letter, and/or the attached notes of Jarvis and Martin if West's testimony proves to be insufficient.

[5] Government's Response to Defendants' Brief at 9.

[6] Because the Court finds that live testimony regarding the July 10 meeting is admissible either under Federal Rule of Evidence 404(b) or for the purposes of impeachment, the Court need not

*II. Lawyers as Witnesses*

According to the "advocate-witness rule," courts generally disfavor allowing a participating prosecutor to testify at a criminal trial. *U.S. v. Prantil*, 764 F.2d 548, 554 (9th Cir. 1985). For this reason, such requests for testimony are generally disfavored, and the "party seeking such testimony must demonstrate that the evidence is vital to his case, and that his inability to present the same or similar facts from another source creates a compelling need for the testimony." *U.S. v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991). If an attorney testifies, then he or she "must promptly withdraw from the conflicting role" of prosecutor. *Prantil*, 764 F.2d at 553.

A defendant "has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness." *Prantil*, 764 F.2d at 551. But a court can consider "[b]oth the quality and quantity of the alternative sources of evidence." *Id.* at 552. In *Prantil*, for example, the court found that an adequate alternative source of evidence was not available "through an FBI agent who listened to some, but not all, of the relevant discussions." *Id.*

In determining whether a defendant has a "compelling need" for testimony from a prosecutor, several courts have considered whether other witnesses could testify, particularly third party government agents. *See U.S. v. Roberson*, 897 F.2d 1092, 1098 (11th Cir. 1990) (finding no "compelling need" when defendant "made no effort to subpoena anyone other than the AUSA" and there were other witnesses available); *U.S. v. Brothers*, 856 F. Supp. 388, 391 (M.D. Tenn. 1993) (holding that defendant could not call prosecutor as a witness when "there were many other

---

reach the issue of whether the testimony would be admissible under Federal Rule of Evidence 608(b). The Court does note, however, that it has strong doubts that the testimony would be admissible under that rule.

5

investigating agents present" at the meetings); *U.S. v. Bin Laden*, 91 F. Supp. 2d 600, 623 (S.D.N.Y. 2000) (denying request for disqualification of prosecutors when "[b]oth prosecutors have affirmed to the Court that they did not participate in any interviews with any Defendants except in the presence of third parties"); *U.S. v. Wallach*, 788 F. Supp. 739, 744 (S.D.N.Y. 1992) (noting that in all interviews, "a third party, and frequently more than one additional agent, was always present"). For this reason, courts have noted that the "correct procedure" for an AUSA to follow "is to avoid interviewing a suspect except in the presence of a third person so that the third person can testify about the interview." *U.S. v. Watson*, 87 F.3d 927, 932 (7th Cir. 1996). *See also* ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 3-3.1(g) (3d ed. 1993) ("Unless a prosecutor is prepared to forgo impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present the impeaching testimony, a prosecutor should avoid interviewing a prospective witness except in the presence of a third person.").

III. George West's Testimony

Because live testimony is available from an equally good source in this case—Burgess's former counsel, West—Defendants have failed to show a "compelling need" for Jarvis's testimony and disqualification. The Defendants argue that West's testimony implicates both Rule 1.05 and Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct, but neither of these rules present clear and unavoidable ethical violations for West. Rule 1.05(b)(2) prohibits a lawyer from using "confidential information of a client to the disadvantage of the client unless the client consents after consultation." "Confidential information" is defined to include both "privileged information" and

6

"unprivileged client information."

The parties agree that West would not be called to testify regarding privileged information since third parties (Jarvis and Martin) were present when Burgess made the statements to which West would testify. In order to remove any potential uncertainty regarding whether the statements made by Burgess were privileged, Burgess submitted an affidavit waiving his attorney-client privilege as to the July 10 meeting. Defendants maintain, however, that West would be placed in the difficult situation at trial of having to determine, in response to each question posed, whether his knowledge was gained from a privileged communication that Burgess made to him during the course of his representation or from unprivileged client communication disclosed during the July 10 meeting. Defendants also have requested that the Court hold a hearing to determine the extent of Burgess's waiver of the attorney-client privilege. The Court denies that request as unnecessary, finding that Burgess's waiver of the privilege is limited to statements made at the July 10 meeting in the presence of his then attorney, West, and the third parties, Jarvis and Martin. *See Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (finding a party that made disclosures to opposing counsel during discovery had "waived its privilege only as to communications about the matter actually disclosed").

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct provides that a "lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure. The possibility of West's future disqualification as Burgess's lawyer at sentencing was eliminated by Prospere's substitution for West as Burgess's counsel. The Texas Disciplinary Rules of Professional Conduct present no

ethical barriers, therefore, to West's testifying to unprivileged statements made by Burgess at the July 10 meeting, and he may testify to those statements should the Defendants need that testimony for impeachment or for Rule 404(b) evidence supporting their defensive theory.

## Conclusion

The Court finds that Defendants have failed to show a compelling need for Jarvis's testimony in this case, given the availability of West as another witness to the statements made by Burgess at the July 10 meeting and Defendants' ability to subpoena him to testify. Accordingly, Defendants' Joint Motion to Disqualify the Prosecutor is DENIED. The Court's ruling, however, is based in part on the implicit agreement made by the Government not to object to the Defendants' use of the Burgess affidavit, hearing transcript, *Brady* letter, and the attached notes of Jarvis and Martin, should the testimony of West be insufficient. The Court ORDERS the Government to file a stipulation confirming this understanding with the Court by November 8, 2006. The Court's ruling is also based on the presumption that West will withdraw as counsel for Burgess. West should promptly file a Motion to Withdraw as Counsel for Burgess. Should the Government fail to file such a stipulation or West fail to file a Motion to Withdraw, the Court may reconsider its ruling.

**SO ORDERED.**

**DATED**: October 25, 2006.

_____
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**