IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | Case No. 3:05-CR-220-M |
| v. | § | |
| | § | |
| | § | |
| | § | |
| MARK MANNERS (2) | § | |
| ANDREW SIEBERT (4) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' requests to be released on bond pending appeal of their convictions. Having considered the parties' briefing and the applicable law, the Court finds that Defendants' requests should be GRANTED.

*Background*

Charles Burgess, Mark Manners, Robert Loeb and Andrew Siebert were charged by indictment with several offenses related to an alleged mortgage fraud conspiracy. Burgess and Loeb pleaded guilty and cooperated with the Government, testifying against Siebert and Manners. Burgess testified at trial that Manners and Siebert's involvement in the fraud scheme was essential to its success. After a two week trial beginning November 28, 2006, the jury found Manners and Siebert guilty on all counts.

On April 12, 2007, the Government met with Burgess and his counsel, to determine whether the Government would move for downward departure pursuant to U.S.S.G. § 5K1.1, for Burgess's substantial assistance to the Government. The Government asked Burgess if he had

told the truth when, during Manners and Siebert's trial, he denied fraudulent activity in 2006 in connection with Oxford Estate Properties. After Government counsel spent approximately ten minutes with Burgess, he admitted that he had not been truthful about Oxford Estate Properties during his testimony.

Following their convictions, Manners and Siebert filed a Motion for New Trial. Defendants argued that the Government violated its *Brady* obligations, and also sponsored false testimony in violation of the *Napue/Giglio* line of cases. On October 4, 2007, this Court denied the part of the Motion seeking a new trial on the ground that the Government violated its *Brady* obligations. On February 6, 2008, after granting the Government's Motion to Reconsider its Order granting a new trial, this Court denied the rest of the Motion, which sought a new trial on the basis that the Government sponsored false testimony in violation of the *Napue/Giglio* line of cases. Manners and Siebert have continued to argue that they are entitled to a new trial because the Government sponsored the perjury of Burgess and failed to correct his false trial testimony. However, this Court reluctantly concluded that it could not grant a new trial under Fifth Circuit precedent, because the Government did not actually know during trial that the testimony given was false, and the false testimony was not material to the outcome of the trial because defense counsel vigorously cross-examined Burgess on the veracity of his testimony.

On May 29, 2008, Manners and Siebert filed a Joint Renewed Motion for New Trial. Defendants claimed that newly discovered evidence of additional alleged *Brady* violations justified the grant of a new trial for both Defendants. Specifically, Defendants alleged that the Government failed to disclose in its *Brady* letter of November 14, 2006, or at any other time prior to Burgess's sentencing, information about another fraud scheme of which Burgess was

allegedly a part.[1] The Defendants claim that this omission "impacted the ability of the defense to challenge the testimony of the government's key witness[,] Charles Burgess." They argued:

> Burgess's participation in multiple, unrelated schemes to defraud after the date upon which he entered a plea and claimed to have changed his life constituted both impeachment evidence and evidence disproving Burgess's testimony that his ability to complete the fraud in this case depended upon the participation of Manners and Siebert.

The Defendants further alleged that to bolster Burgess's credibility as a witness the Government "expended considerable effort and time exploring Burgess's motivation to tell the truth and the penalties if he should lie." The Defendants asked the Court to grant a new trial if it found that the cumulative effect of this alleged *Brady* violation, in combination with the other alleged *Brady* violations, raised a reasonable probability that disclosure would have produced a different result.[2] After conducting an evidentiary hearing on October 10, 2008, this Court denied the second Motion for New Trial.

## *Legal Standard*

The Bail Reform Act, 18 U.S.C.A. § 3143(b), provides the legal standard for granting bail while an appeal is pending. It provides, in part:

> (b) Release or detention pending appeal by the defendant.--(1) … the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--

---

[1] The November 14, 2006, *Brady* letter also did not disclose Burgess's involvement in the Oxford Estate Properties scheme.

[2] The Defendants rely on *United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004), where the court granted a new trial based on the impact of cumulative *Brady* violations.

> (i) reversal,
> (ii) an order for a new trial…

The Fifth Circuit addressed this standard in *United States v. Valera-Elizondo*.[3] There, the court listed the four prerequisites a defendant has the burden of proving to obtain release on bail pending his appeal:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.[4]

The Government concedes that this is the appropriate standard, and that only the last two factors are at issue in this case.[5] Therefore, this Court must determine whether the Defendants' appeal raises a substantial question of law or fact, and whether if such question is determined in Defendants' favor, it will likely result in reversal of their convictions or a new trial.

The Fifth Circuit elaborated on the meaning of "substantial question" in *Valera-Elizondo*, finding that it "cannot be read as meaning, as the district court apparently believed, that the district court must conclude that its own order is likely to be reversed," but rather means the trial court has identified a "fairly debatable" question or "substantial issue" that "calls into serious question the correctness of the judgment of conviction."[6] The Fifth Circuit also adopted the Eleventh Circuit's definition of "substantial question," meaning an issue with "more substance than would be necessary to a finding that it was not frivolous," or a "'close' question or one that

---

[3] 761. F.2d 1020 (5th Cir. 1985).
[4] *Id.* at 1025.
[5] *See* Government's Reply Regarding the Standard for Granting Appeal Bond, at 1.
[6] *Valera-Elizondo*, 761 F.2d at 1022 (adopting *United States v. Miller*, 753 F.2d 19, 23 (3rd Cir. 1985)).

very well could be decided either way."[7] The Fifth Circuit concluded by adding that a "'substantial question' means that the issue presented must raise a substantial doubt (not merely a fair doubt) as to the outcome of its resolution."[8]

Importantly, the matter can present a question that is *either* novel, i.e., one that has not been decided by controlling precedent, *or* a question that is "fairly doubtful." Contrary to the Government's assertion, the Fifth Circuit does *not* require the Defendants to prove that the issue is *both* a novel question and one that raises substantial doubt. In *Valera-Elizondo*, the Fifth Circuit stated:

> First, the court must determine that the question raised on appeal is substantial, that is to say a question that is *either* novel, which has not been decided by controlling precedent, *or* which is fairly doubtful. Secondly, the court must determine whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial.[9]

The court explained that "the absence of controlling precedent is only one factor to be considered in the court's determination of whether a defendant's argument has a substantial chance of prevailing."[10]

Turning to the last prong of the test, the Fifth Circuit in *Valera-Elizondo* adopted the Government's construction of §3143(b), and held that the defendant must demonstrate that "if error is found, it will so taint the conviction that it is *more probable than not* that reversal will be required."[11] The court further explained the defendant's burden of proof in a footnote:

> It should be emphasized that the Government does not maintain that a defendant must demonstrate a probability that the particular question will be decided in his favor, only that he has a substantial chance of prevailing. Further, under the

---

[7] *Id.* at 1024 (citing *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).
[8] *Id.*
[9] *Id.* at 1023 (emphasis added) (citing *Miller*, 753 F.2d at 23).
[10] *Id.* at 1024.
[11] *Id.* (emphasis added).

> Government's construction of § 3143(b) it is incumbent upon a defendant to show that error, if found, would more likely than not lead to a specific form of relief, *i.e.,* reversal or an order for a new trial.[12]

The Fifth Circuit also noted that "'likely' means 'having a better chance of existing or occurring than not.'"[13]

In short, the Defendants in this case must demonstrate that a substantial question of fact or law exists, that calls into question the validity of their convictions, and if the Fifth Circuit decides the question in their favor, it will more likely than not grant a new trial.

*Analysis*

Defendants point to their Motions for New Trial to meet the burden of identifying a substantial question of law or fact that is likely to result in the grant of a new trial on appeal. They rely on the presence of perjured testimony at the criminal trial, elicited upon questioning by the Government, as well as alleged *Brady* violations, as "substantial questions" that will arise on appeal. The Defendants argue that "[t]his Court's own statements and rulings indicate that the main *Napue*, *Brady* and *Giglio* issues raised by counsel for Mr. Manners and Mr. Siebert present 'close' calls."

The Government argues that "it is clear that there was abundant precedent to guide the Court's decision-making," in denying the Defendants' Motions for New Trial. It further contends that Defendants failed to identify any questions for appeal that are not determined by controlling precedent, that are close, and that are clouded by substantial doubt about how the question will be resolved by the court of appeals. Finally, the Government contends that Defendants failed to demonstrate that a new trial will result if the appeal is decided in their favor,

---

[12] *Id.* at 1025 n.8.
[13] *Id.* at 1025 n.7.

and that a new trial is in fact "unlikely" even if the Fifth Circuit determines that this Court erred in some way.

The Court finds that the issues raised in the Motions for New Trial do present a "substantial question of law or fact" for appeal. Contrary to the parties' assertion, the Court does not reach this conclusion merely because it originally granted a new trial and then later reversed its decision. Rather, the Court finds genuine substantial questions of law that the Fifth Circuit will address on appeal which call into question the validity of the convictions in this case. Specifically, the Fifth Circuit could very well conclude that a new trial is required in a case where multiple serious *Brady* violations are alleged, and perjured testimony was elicited by the Government from a cooperating witness.

While in this case the Court determined that the Government did not have actual knowledge of the false testimony as it was given at trial, there was evidence that the Government, and/or its agents, *should have known* that the testimony was false when it was given, and in fact strongly suspected as much, but elected not to inquire further until the trial was over. Further, although this Court determined that the perjured testimony was immaterial given that both defense counsel and the Government repeatedly attacked the credibility of the perjured witness, proof of the lie itself could very well have changed the result of the trial, making the validity of the convictions questionable. While the Court believes that it correctly applied the controlling precedent to these facts, it has reason to doubt the outcome, and a strong question as to whether justice was done. The Fifth Circuit could very likely find that notice of the false testimony should have been imputed to the Government under these facts and that the jury could, upon absolute proof that Burgess was lying, find him completely unreliable as a witness and

thereby reach a different conclusion as to the guilt of Manners and Siebert.[14]

The Court further finds that if these issues are determined in favor of the Defendants on appeal, the Fifth Circuit will likely grant them a new trial. If the Fifth Circuit finds a *Napue/Giglio* violation, then the Defendants' constitutional rights have been violated, and a new trial will be warranted. This is especially true in light of the numerous *Brady* violations alleged by Defendants, which when viewed in conjunction with the perjured testimony, call into serious question the validity of the criminal convictions in this case.

## *Conclusion*

The Court finds that the Defendants are not likely to flee or pose a danger to the safety of any other person in the community, and that the Defendants' appeal is not for the purpose of delay, but so that justice be done. The Court further finds that a substantial question of law exists as to the presence of a *Napue/Giglio* violation, and as to the effects of such a violation in conjunction with alleged *Brady* violations. Because this Court finds that if this question is determined in the Defendants' favor on appeal a new trial would be the likely remedy, it hereby GRANTS the Defendants' request to remain on bond while their appeals are pending.

SO ORDERED this 22nd day of January, 2009.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[14] This is especially true given that Burgess played a major role in the alleged mortgage fraud conspiracy, and his testimony at trial was likely significant to proof of the entire scheme.